WILLIAM P. TAYLOR, as Receiver of the BUFFALO ICE COMPANY, Respondent, *v.* CITIZENS' ICE COMPANY, Appellant.

*Proof of an oral agreement modifying a written contract — competent where the contract embodies a joint adventure in which all the parties are represented and the modification has been acquiesced in — effect of acquiescence in the minutes of the board of directors of a corporation.*

The representatives of five ice companies formed a sixth company, of which all of the stock was owned by the component companies, each of them having a representative in the board of directors of the new company, which was to purchase ice from each of the component companies in proportion to the stock held by it in the new company. A written contract fixing the prices to be paid by the new company for the ice furnished to it was made, and it was orally agreed that if the net profits of the company did not warrant the prices named new prices would be fixed, which could be paid from the net profits.

In an action brought against the new company by the receiver of one of the component companies, the Buffalo Ice Company, to recover, at the contract price, for ice furnished by it to the defendant, it was

*Held*, that evidence tending to show a modification of the contract by the parties, either by parol or in writing, or otherwise, was admissible;

That a resolution of the new corporation, providing that it would no longer pay the price named in the contract, but only such sums as its net earnings permitted it to pay, was binding upon the Buffalo Ice Company where it appeared that that company had authorized its representative in the board of directors of the new corporation to enter into any agreement changing, amending or reforming any contract relating to the joint venture, and that the component companies were paid according to the amount of the net profits after the passage of the resolution, without objection on the part of the Buffalo Ice Company;

That such evidence was sufficient to warrant a court or jury in finding a modification of the original contract, the consideration for which was the release by the other companies of their rights under the original agreement;

That the absence of the representative of the Buffalo Ice Company from the meeting at which the resolution purporting to change the contract was passed did not affect its validity as against that company, it appearing that he was present at the next meeting, at which the minutes of the previous meeting were read and approved, and that, although he was not shown to have assented to the modification, the subsequent conduct of his company in accepting payments made in accordance with such resolution was such as would indicate its acquiescence in the enforcement of the resolution.

APPEAL by the defendant, the Citizens' Ice Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Erie on the 10th day of February, 1899, upon the report of a referee.

*Sidney W. Petrie*, for the appellant.

*J. H. Metcalf*, for the respondent.

SMITH, J. :

The defendant company was one formed for the purchase, sale and delivery of ice in the city of Buffalo. It was formed by the representatives of five different ice companies, one of which was the Buffalo Ice Company. The stock was all owned by these five companies, each of which had a representative in its board of directors. The representative of the Buffalo Ice Company was Harry Yates, the president of that company. The preliminary agreement made between the representatives of the five companies, before the organization, provided for the amount of stock that should be held by each company, and further provided that the defendant company should purchase ice from each company in proportion to the

amount of the stock held. The Buffalo Ice Company held fifty per cent of the stock, and sold to the defendant fifty per cent of its ice. After the formation of the company, the defendant made similar contracts with each company for the purchase of the ice. One of these contracts was made with the Buffalo Ice Company as party of the first part and the defendant as party of the second part, which provided that the first party was to sell to the second party fifty per cent of all ice used by the second party for a period of ten years from April 1, 1896, at the rate of seventy-five cents per ton from January first to May first, and one dollar and fifty cents from May first to January first in each year. There is no controversy as to the amount of ice sold under this contract; and if the contract prices are the measure of the defendant's liability, the judgment is right.

The answer of the defendant alleges that, at the time these several contracts were made between the Citizens' Ice Company and the different contributing companies for the purchase of ice, the price was discussed; that it was there agreed that the price to be paid was to be regulated by the amount of the net profits, and was to be raised or lowered to correspond; and that upon that basis the defendant company had fully paid for all the ice which it had purchased of the Buffalo Ice Company. The defendant asks to have the contract so reformed as to express such agreement. Claiming to have overpaid to the amount of about $450, it counterclaims for that sum. The referee has found that the contract expresses the agreement made; that there was no mistake of fact or law under which it was made, and that the defendant is not entitled to relief.

This finding by the referee is the only one warranted by the evidence. The contract was made understandingly, under no mistake, either of law or fact. It was stated, and orally agreed, before the written contract was entered into, that if the net profits of the defendant company did not warrant the prices named, new prices would be made which the net profits could pay. But those new prices were to be made by the parties, and, until made, the contract prices were to govern. Such, we think, is the clear import of the evidence. It is in harmony, too, with the purposes of the defendant's incorporation. The five contributing companies, which were to furnish to the defendant substantially all the ice to be used, were

the sole owners of the defendant's stock. The defendant's gain was their gain — the defendant's loss, their loss. Presumptively reliance could be placed upon this interest to regulate the prices to correspond with the net profits. But as far as the admitted evidence discloses, no change in the prices was made. Without evidence of a subsequent modification, the contract price was properly held to determine defendant's liability.

The defendant now claims that evidence of a modification of this contract was offered by it and rejected by the referee, and upon his exception to this ruling he bases, in part, his argument for a reversal of this judgment. The rulings upon which this exception was taken appear from folio 493 to 499. Defendant offered in evidence a resolution passed by the directors of the Citizens' Ice Company on the 15th day of June, 1897. It was stated that this resolution was offered "for the purpose of showing that as soon as it was found by the Citizens' Ice Company that it could not pay $1.50 and $.75 a ton for ice, without loss, that it passed a resolution which provided that only such sums should thereafter be paid each of the component companies as the net earnings permitted." The referee ruled that a resolution passed by the Citizens' Ice Company, varying this contract, could not be binding upon the Buffalo Ice Company, and excluded the evidence to which the exception was taken, which is here urged.

The defendant offered in evidence a record of a meeting of the board of directors of the Buffalo Ice Company on the 27th of December, 1895, at the office of the company, "ratifying the act of Harry Yates in making and signing the contract dated December 20th, 1895, between the Buffalo Ice Company, L. B. Banks & Co., the Union Ice Company, Queen City Ice Company and American Ice Company, relating to the formation of the corporation to be called the Citizens' Ice Company, and authorizing him to enter into any other agreements or contracts in any wise relating to the subject-matter contained in said contract, changing, amending and reforming the same, and to do each and every act necessary to carry into effect each and all of said contracts." Defendant further offered in evidence, at folio 503, the minutes of the American Ice Company and the Queen City Ice Company, showing the passage of a similar resolution. Both of these offers were objected to and

the objection sustained, and the defendant excepted. At folios 506 and 507 it appears that, after the 15th of June, 1897, the companies were paid, in accordance with the resolution offered, their *pro rata* share of the net profits. It appears that this continued down to the time that the Buffalo Ice Company went into the hands of a receiver, with no objection or protest on the part of the Buffalo Ice Company.

In these rulings we think the learned referee committed error. The contract made for ice at the given price could be modified by the contracting parties at any time, either by a written modification or by parol, or in any other way in which the parties chose to express their intention. By the resolutions which were offered in evidence and rejected, it appears that the representatives of the different ice companies in the board of directors were given full power " to enter into any other agreements or contracts in any wise relating to the subject-matter contained in said (combination) contract, changing, amending and reforming the same, and to do each and every act necessary to carry into effect each and all of said contracts." Authority is also claimed from the nature of the transaction. The Citizens' Ice Company was a combination of the interests of these five ice companies, who were solely interested therein. Each had a representative in the board of directors. His duty and authority was to care for the interest of the company he represented. The representative of the Buffalo Ice Company was Mr. Yates, its president. Considering the purpose of the formation of this company and the ultimate purpose to distribute the net profits among the five companies contributing, and the general authority given to Mr. Yates by the resolution of the Buffalo Ice Company, we have no doubt of the authority of Mr. Yates and the other representatives of the different companies to vary the contract upon which the plaintiff here sues, either by a resolution at the directors' meeting or by a separate contract. The subsequent course of business between the Citizens' Ice Company and these respective companies, in accordance with this resolution, is evidence from which can be found a modification of the contract by the companies themselves, whether as recognizing the authority of their representatives or as showing such acquiescence in the resolution as amounted to an adoption of the modification. The sole question here is as to the intent of the parties.

A convincing factor in determining this intent is the fact that these contributing companies were stockholders in the exact ratio that the debt of the several companies bore to the whole debt. They could not, therefore, have intended to maintain this contract at a loss to themselves to which each must contribute its ratable proportion. It would be the child's game of taking money from one pocket to put into another, which these business men were not presumed to be playing. It will be remembered that the appellant need not here show facts which necessarily establish a modification of the contract through this resolution. It is sufficient to reverse this judgment that they show facts from which a court or jury might find an intent to change the contract. Such modification of the original agreement would find abundant consideration in the release by the other companies of their contract rights which follow from the modification.

It is first objected that the resolution is not as broad as is claimed, as appears from the statement of respondent's counsel. But the resolution is not before us, and as it was excluded, we must assume that it would have shown all that is claimed for it in the offer. Another objection is made, that it appears that Mr. Yates, the representative of the Buffalo Ice Company, was not present at the meeting when the resolution was passed which purported to change the contract, and that while, by the offer of defendant's counsel, it appears that he was present when the minutes of the meeting were read and approved, it does not appear that it was with his acquiescence. It is undoubtedly true that this contract could not be modified by any resolution in which the representative of the Buffalo Ice Company did not acquiesce; and if he objected when the minutes of the meeting, at which the resolution was passed, were read at the subsequent meeting, it would be strong evidence that he did not acquiesce in this assumed modification. By fair intendment, however, the defendant's offer must be construed to mean that at the subsequent meeting the approval was made without his dissent. Especially is this true where the evidence was excluded. Furthermore, the mere presence and failure to dissent of this representative of the Buffalo Ice Company, when these minutes were read and approved, does not necessarily show an acquiescence in the modification assumed to be made. It is evidence, how-

ever, from which, in connection with the other evidence in the case, the court or jury might find such acquiescence. With the Buffalo Ice Company holding one-half of the stock of the defendant corporation, it is most improbable that this resolution would have been passed without its acquiescence; and the subsequent course of the Buffalo Ice Company, in accepting, without protest, the payments made in accordance with the resolution, would be sufficient indication of the acquiescence of the company to make the question one of fact as to its intention to modify the original contract.

While the evidence offered to prove a modification of the original agreement was not strictly in accordance with the theory of the defendant's answer, nevertheless, no objection was made that the defense was not pleaded. Had such objection been then made, the defendant could have then made application for an amendment or for a postponement in order that an application to the court to amend might be made. In *Cary* v. *White* (59 N. Y. 336) the rule is stated in the head note thus: " When evidence offered is objected to and excluded upon a specific ground, the party objecting must be confined thereto, and cannot rely upon another defect upon appeal unless it be one that could not in any manner have been remedied upon the trial."

For the error of the referee in excluding this evidence the judgment should be reversed.

All concurred.

Judgment reversed and a new trial ordered, with costs to the appellant to abide the event.